Taet, J.,
concurring. Unless the evidence before the board was such as to require as a matter of law a determination that Mr. Schorr’s voting residence was not as stated in his declaration of candidacy, then the decision of the board must be sustained. In other words, if there was substantial evidence to sustain that decision, the writ requested must be denied. In such an instance where there is no claim of any fraud or corruption on the part of the board, this court cannot say that the board abused its discretion. State, ex rel. Burgstaller, v. Board of Elections, 149 Ohio St., 193, 78 N. E. (2d), 352.
In order to determine whether there was substantial evidence to sustain the decision of the board that Mr. Schorr’s voting residence was as stated in his *340 declaration of candidacy, it is first essential to determine how the law defines the term, voting residence.
In order to vote in a particular precinct and county, Section 4785-30, General Code, requires that a person be a “resident” of that precinct and county.
Section 4785-31, General Code, then provides:
“All registrars and judges of elections, in determining the residence of a person offering to register or vote, shall be governed by the following rules, so far as they may be applicable:
“a. That place shall be considered the residence of a person in which his habitation is fixed, and to which, whenever he is absent, he has the intention of returning.
“b. A person shall not be considered to have lost his residence who leaves his home and goes into another state or county of this state, for temporary purposes only, with the intention of returning.
“c. A person shall not be considered to have gained a residence in any county of this state, into which he comes for temporary purposes only, without the intention of making such county his permanent place of abode.
“d. The place where the family of a married man or woman resides shall be considered and held to be his or her place of residence; except that where the husband and wife have separated and live apart, the place where he or she resides the length of time required by the provisions of this act to entitle a person to vote, shall be considered and held to be his or her place of residence.
“e. If a person remove to another state with the intention of making such state his permanent residence he shall be considered to have lost his residence in this state.
“f. If a person remove to another state with the *341 intention of remaining there an indefinite time and making snch state his place of residence, he shall he considered to have lost his residence in this state, notwithstanding he may entertain an intention to return at some future period.
“g. If a person remove to the District of Columbia,, or other federal territory, to engage in the government service, he shall not be considered to have lost his residence in this state during the period of such service, and likewise should he enter the employment of the state, the place where such person resided at the time of his removal shall be considered and held to be his place of residence.
“h. If a person goes into another state, and while there exercises the right of a citizen by voting, he shall be considered to have lost his residence in this state.
“i. All questions of the right to vote shall, except as otherwise provided herein, be heard and determined by the judges of election in the precinct where the question arises.
“j. The term ‘temporary purposes,’ as used in this section, shall be construed to permit a period of absence not in excess of three years.”
Admittedly, Mr. Schorr is a married man. The evidence in the instant ease requires the conclusion, as a matter of law, that “the place where * * * [his] family * * * resides ” is in Franklin county. The question remains whether Mr. Schorr can vote only in Franklin county because paragraph d of the statute provides that such place “shall be considered and held to be his * * * place of residence.” This court approached near to deciding but apparently did not actually decide that question in Jolly v. Deeds, Chairman, 135 Ohio St., 369, 21 N. E. (2d), 108. That case is distinguishable from the instant case, because Mr. Schorr does still have a place of habitation at his *342 Cincinnati address and receives some mail there. In the Jolly case, while Mrs. Cottrill “and her family wanted to move back into the village at some future time, ’ ’ she and they no longer had any place of habitation in the village.
The board relies principally on paragraphs a, b, and j of Section 4785-31, General Code, to sustain its decision.
It is arguable that there was substantial evidence tending to indicate that the Cincinnati address, which Mr. Schorr gave as his voting residence in his declaration of candidacy, was such a place as described in paragraph a of that statute. If it was, then “that place shall be considered * * * [his] residence.” However, that very evidence discloses that, whenever Mr. Schorr is away, and even when he is in Cincinnati, “he has the intention of returning” to his Franklin county house. In other words, any intention he may have to return to Cincinnati is a remote, as distinguished from the immediate intention which he has of returning to Franklin county.
On the other hand, paragraph b of Section 4785-31, General Code, represents a modification of paragraph a of that statute. Admittedly, Mr. Schorr at one time fixed his habitation in Cincinnati. There is substantial evidence of Mr. Schorr’s intention eventually to return from Franklin county to Cincinnati. Also, there is evidence that he has not gone to Franklin county for permanent purposes. If the antithesis of “permanent purposes” is “temporary purposes,” as the words in paragraph c of the statute tend to indicate, then the rule stated in paragraph b of the statute would support the board’s position.
Both parties then rely on paragraph j of the statute. What this paragraph means depends upon the meaning of “absence.” Certainly, there has never been a *343 period of three years when Mr. Schorr was not in Cincinnati. So, it may be argued that he has not been absent therefrom in “excess of three years.”
Some support for such an argument is found in paragraph f of the statute. This paragraph provides only for the effect of “remaining * * an indefinite time” where there is removal “to another state,” not to another part of this state. Likewise, the board’s position gets some support from the provisions of paragraph h of the statute. There is no similar provision about losing a residence in one part of the state because of going into another part and voting there. Therefore, even if Mr. Schorr could have voted in Franklin county, it would not follow, under the words of paragraphs f and h of the statute, that he could not later vote in Cincinnati, even though he was living in Franklin county for an indefinite period.
In making provision for the place where an elector may vote, the General Assembly has not specified that he may vote only at his place of domicile. Instead the words “resident” (Section 4785-30, General Code) and “residence” (Section 4785-31, General Code) have been used. A man may have more than one residence although he can have only one domicile. See Grant v. Jones, 39 Ohio St., 506, 515; 17 American Jurisprudence, 594, Section 9.
An examination of the rules for determining residence, specified in Section 4785-31, General Code, indicates that, if a literal interpretation is given to the language used by the General Assembly, an individual may sometimes come within the definition of more than one of the situations where it is specified that a described place “shall be considered * * * to be his * * * residence.” For example, a married man domiciled in county A may “enter the employment of the state” and thereafter move his family to county B. *344 If the family thereafter resides in county B, paragraph d of Section 4785-31, General Code, provides that county B ‘‘ shall be considered and held to be his * * * place of residence.” At the same time, paragraph g of that statute provides that “the place where such person resided at the time of his removal [county A] shall be considered and held to be his place of residence.” , If such person, even without moving his family from county B, then acquires a fixed “ habitation” in Franklin county “to which, whenever he is absent, he has the intention of returning,” paragraph a of that statute provides, in effect, that Franklin county “shall be considered the residence.”
The mere fact that the ordinary meaning of the' provisions of the applicable statutes may give a particular individual a choice of more than one place as his voting residence is no reason for determining that those statutes should be so construed as not to permit that. Obviously, such individual can vote only once at the same election. If he even tries to vote more than once at such election, he thereby violates the law. See Section 4785-202, General Code.
Apparently, the General Assembly, in providing for voting at the residence and setting forth rules for determination of such residence, recognized that there would be instances in which it would be- difficult for an individual to determine where his domicile was or what his only voting residence was, if no leeway was given him to determine that for himself within certain limitations. The rules which the General Assembly specified were apparently intended to enable an individual in such a situation to select as his residence some place which fairly conformed with one or more of the several rules specified, even though it might not conform with some of the other rules so specified or might not be his domicile.
*345 In my opinion, there is substantial evidence in the record to sustain a conclusion that Mr. Schorr, in selecting Cincinnati as his voting residence, did select a place which fairly conformed with the rules specified for determining residence in paragraphs a, b and j of Section 4785-31, General Code.
Stewart, J., concurs also in the foregoing concurring opinion.