# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### (HEARD AT CHATTANOOGA)

FILED

March 23, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

FOR PUBLICATION

Filed: March 23, 1998

| | | |
|---|---|---|
| WAYNE LEE AND<br>C. EDDIE SHOFFNER, | ) | |
| | ) | |
| Plaintiffs/Appellees, | ) | CLAIBORNE CHANCERY |
| | ) | |
| v. | ) | Hon. Billy Ray White, Chancellor |
| | ) | |
| ROBERT TUTTLE, JAMES K. LOOPE,<br>ELEANOR Y. BREEDING,<br>STEWART COLLINGSWORTH, and<br>BETTY MANNING, | ) | No. 03S01-9610-CH-00105 |
| | ) | |
| Defendants, | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| BILLY RAY CHEEK and<br>BRUCE SEAL, | ) | |
| | ) | |
| Defendants/Appellants. | ) | |

## FOR DEFENDANTS/APPELLANTS:

A. Benjamin Strand, Jr.
Dandridge

FOR APPELLEE LEE:

Michael G. Hatmaker
Jacksboro

FOR APPELLEE SHOFFNER:

Mark C. Travis
Morristown

# O P I N I O N

COURT OF APPEALS REVERSED; CASE DISMISSED        HOLDER, J.

## OPINION

This is an election contest alleging irregularities or mistakes in vote counting in the 1994 election for Claiborne County Sheriff and Circuit Court Clerk.[1] The issue with which we are confronted is whether votes shall be recounted when contestants allege that irregularities in vote tallying caused their defeat. The Court of Appeals ordered a recount pursuant to Blackwood v. Hollingsworth, 195 Tenn. 427, 260 S.W.2d 164 (1953). Upon review, we reverse. We distinguish the present case from Blackwood on the basis that Blackwood dealt with fraud and not mere irregularities or honest mistakes. We hold that the plaintiffs are not entitled to relief as they have neither shown fraud nor to a mathematical certainty that but for the irregularities they would have been victorious.

## BACKGROUND

The plaintiffs, Wayne Lee and Eddie Shoffner, were contestants in the 1994 Claiborne County general election. Plaintiff Lee was a candidate for court clerk and was defeated by approximately 79 votes. Plaintiff Shoffner was a candidate for sheriff and was defeated by approximately 169 votes.

The plaintiffs' complaint alleged that in excess of 8,200 people voted in the contested election. They further alleged that approximately 2,595 of the total votes were cast by early or absentee voting. These early or absentee votes were cast on paper ballots. In addition, the plaintiffs alleged that there was a "vigorous write-in campaign for the office of Claiborne County Executive." The

---

[1] Oral argument was heard in this case in Chattanooga, Hamilton County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

write-in campaign coupled with the early or absentee voting led to a high number of paper ballots. The basis of plaintiffs' suit is that irregularities in the counting of these paper ballots caused their defeat.

The machine votes were counted at their respective precincts, and the paper ballots were taken to the Office of the Election Commission in Claiborne County. The plaintiffs alleged that conditions at the Office of Election Commission were intolerable during the paper ballot count. Testimony at trial indicated that several individuals smoked and that the counting room was poorly ventilated and lacked air conditioning. There was also a temporary power outage. While counting ballots, the election judges, registrars, and vote counters remained in this environment for approximately 30 hours.

Plaintiffs also alleged that irregularities in ballot counting occurred. An election judge, Rocky Manning, testified at trial. He stated that ballots were rejected if a candidate's name had been properly marked and the same candidate's name was placed in the write-in column of the ballot.[2] He estimated that approximately 20 ballots per district were rejected. Steve Brogan, an election judge, testified that the rejection policy was applied uniformly to every ballot and not solely to ballots favoring the plaintiffs.

The trial court dismissed the plaintiffs' case, holding that the "[p]laintiffs had failed to establish a prima facie case by failing to show with mathematical certainty that any irregularity in the election held on August 4, 1994, would have affected the outcome of the election." The Court of Appeals reversed and held that a recount should take place. The appellate court quoted Blackwood v.

---

[2] Testimony indicates that the ballots were rejected as constituting two votes.

Hollingsworth, 195 Tenn. 427, 260 S.W.2d 164 (1953), in support of its holding. For the reasons stated below, we reverse the appellate court's judgment.

**DISCUSSION**

There are two grounds in Tennessee upon which an election contest may be predicated. In Forbes v. Bell, 816 S.W.2d 716, 719 (Tenn. 1991), this Court delineated the grounds for an election contest. In Forbes, we held that a contestant may either file a suit to be declared a winner or file a suit to have the election declared void. In an election contest suit, courts are vested with the statutory authority to: (1) confirm an election; (2) declare an election void; (3) declare an election a tie; and (4) declare a contestant a winner. Tenn. Code Ann. § 2-17-112 (1994 Repl.). On appeal to the appellate court, the plaintiffs requested a recount and did not request that the election be declared void. The appellate court ordered a recount. Accordingly, our scope of review is whether the appellate court erred in ordering a recount.

In a suit to be declared the winner, contestants must show: (1) that the number of illegal votes exceeded the margin of victory; and (2) that to a mathematical certainty they would have been victorious had the illegal votes not been counted. Millar v. Thomas, 657 S.W.2d 750, 751 (Tenn. 1983). To obtain mathematical certainty, contestants must: (1) specifically identify each illegal voter; and (2) show for whom the illegal voters voted.

This Court has also previously recognized that a recount by the trial court may be ordered where fraud has permeated the election process and it is impossible for a contestant to show fraud absent a recount. In Blackwood v. Hollingsworth, 195 Tenn. 427, 260 S.W.2d 164 (1953), the contestant alleged

4

that election officials fraudulently miscalled several hundred legal votes for the contestee that had been marked for the contestant. We held that when legal votes were fraudulently miscalled the contestant may be entitled to a recount if the proof was sufficient to justify going behind the official returns. Factors justifying a recount in Blackwood were: (1) it was impossible for the contestant to point out the identity of the legal voters whose ballots had been fraudulently miscalled; (2) it was impossible to show fraud absent a recount; and (3) the ballot box had been properly secured and admitted into evidence.

The appellate court found that the present case was controlled by our holding in Blackwood. Blackwood, however, held that a recount was appropriate when legal ballots had been fraudulently miscalled. We are unpersuaded that Blackwood should stand for the proposition that courts should go behind official results whenever a contestant alleges irregularities or honest mistakes occurring during the tallying of legal votes. Such a holding could potentially render every election subject to both a recount and judicial scrutiny.

The plaintiffs also cite Dixon v. McClary, 349 S.W.2d 140, 209 Tenn. 81 (1955), in support of their argument. In Dixon, armed men entered the ballot counting room, attempted to destroy ballots and threatened election officials with bodily harm. One of the individuals illegally present in the counting room then marked approximately 98 unopened and uncounted ballots void.

Dixon is inapposite to the present case. In Dixon, absentee ballots were marked void and not counted due to duress and threats made by armed individuals. The ballots voided under duress were subsequently opened and counted by the trial court. Accordingly, Dixon permitted counting of legal votes illegally voided during a scheme to defraud an election's results.

5

Similarly, in <u>Summitt v. Russell</u>, 285 S.W.2d 137 (Tenn. 1955), the contestant requested a recount alleging "mistakes, and illegal and fraudulent count in various precincts." <u>Id</u>. at 138. Evidence showed that an election official "was getting all the votes he could get off the contestant." <u>Id</u>. at 139. Testimony also indicated that legal votes for the contestant were marked by an election official for the contestee. The ballot box had been secured and was admitted into evidence. This Court held that a recount was proper.

Upon review, we find that the plaintiffs have not met their burden in a suit to be declared a winner. They have neither alleged that the election was permeated with fraud nor that illegal votes had been cast. Absent fraud or illegal votes, courts should strive to refrain from interfering with official election returns. We, therefore, hold that contestants must show to a mathematical certainty that but for the mistakes or irregularities they would have been victorious when election contests are predicated on mere irregularities or honest mistakes in the tallying of legal votes.

The plaintiffs' proof is speculative and falls well short of establishing to a mathematical certainty that they should have been declared the winners. The record indicates that the rejection policy was uniformly applied to every ballot and, therefore, had a potentially equal impact on all candidates. One could assume that the margins of victory for the defendants would be even greater upon a recount. Accordingly, the plaintiffs' proof is speculative and does not entitle the plaintiffs to their requested relief.

The Court of Appeals' decision ordering a recount is reversed and the plaintiffs' case is dismissed. Costs of this appeal are taxed to the plaintiffs, Wayne Lee and Eddie Shoffner, for which execution may issue if necessary.

6

_____
Janice M. Holder, Justice

**CONCURRING:**

Anderson, C.J.
Drowota and Birch, JJ.

**SEPARATE CONCURRING OPINION:**

Reid, J.

IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

FILED

**March 23, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

WAYNE LEE AND C. EDDIE SHOFFNER,      (

          Plaintiffs-Appellees,      (

                                      (   Claiborne Chancery

                                      (

v.                                    (   Hon. Billy Joe White,

                                      (   Chancellor

                                      (

ROBERT TUTTLE, JAMES K. LOOPE,        (   No. 03S01-9610-CH-00105

ELEANOR Y. BREEDING, STEWART          (

COLLINGSWORTH, BETTY MANNING,         (

BILLY RAY CHEEK AND BRUCE SEAL,       (

                                      (

          Defendants-Appellants.      (


**CONCURRING OPINION**


I concur with the conclusion that the contestants cannot prevail in this election contest suit. I write separately to expand upon some points which are not, in my view, adequately developed in the main opinion.

The pleadings in a suit to contest an election are critically important, particularly the allegations of fact on which the claim for relief is based and the relief sought. A contest may be based on the allegation that the election was valid as well as the allegation that the

election was void. The contestant may limit the relief sought to a determination that the contestant is entitled to be declared the winner of the election or to an adjudication that the election is void. Tenn. Code Ann. § 2-17-112 (1994). The contestant may seek relief in the alternative, that the contestant be declared the winner or that the election be declared void. A contestant may also seek a recount of the ballots cast in the election. However, the relief sought must be consistent with the allegations of fact, and, if the allegations of fact and the relief sought are not consistent, the suit may be dismissed for failure to state a cause of action on which relief can be granted. Tenn. R. Civ. P. 12.02(6). If the proof does not support the relief sought, the suit will be dismissed, even though the proof may support relief which is not sought. For instance, the contestant in Forbes v. Bell, 816 S.W.2d 716 (Tenn. 1991), sought a declaration that she was the winner upon the allegations that "the wholesale disregard of the election laws" resulted in 861 illegal ballots. The Court noted that because the complaint did not set forth the number of votes each candidate received "we have no way of determining whether the number of allegedly illegal votes equals or exceeds the margin of [the contestee's] victory." The Court held, "[t]his omission alone is fatal to Forbes's claim that she should be declared the duly elected winner" and affirmed

the dismissal of the complaint for failure to state a cause of action.  Id. at 719.

The contestant cannot be declared the winner upon the allegation that the election was void; the only relief available is a new election.  In Emery v. Robertson Co. Election Comm'n, 586 S.W.2d 103 (Tenn. 1979), the election was declared void and a new election ordered upon the allegation and proof that fraud or other illegality so permeated the election as to render the results incurably uncertain.

> The courts may also void elections
> upon a sufficient quantum of proof that
> fraud or illegality so permeated the
> conduct of the election as to render it
> incurably uncertain, even though it
> cannot be shown to a mathematical
> certainty that the result might have
> been different.

Id. at 109.  In Shoaf v. Bringle, 192 Tenn. 695, 241 S.W.2d 832 (1951), the contestant sought alternative relief, either that the contestant be declared the party elected or a declaration that the election was void.  The Court found that the proof did not support the claim that the contestant was entitled to be declared the winner but that the election was rendered void by the fraudulent and illegal acts of the election officials.  The Court stated:

> Such allegations in the bill as "many legal votes" and "many votes" and such general statements are entirely too general under the ground that the election was valid. <u>Maloney v. Collier</u> [112 Tenn. 78, 83 S.W. 667 (1904)]. But when we come to consider the ground that the election was void because of the fraudulent and illegal acts of those holding the election such general allegations if supported by any specifically stated facts may be taken into consideration. The allegations of fraud must be supported by some specific allegation of fact.

<u>Id.</u> at 835. In <u>Millar v. Thomas</u>, 657 S.W.2d 750 (Tenn. 1983), the Court reaffirmed the holding in <u>Emery v. Robertson Co. Election Comm'n</u> that an election can be found void upon a showing "that fraud or illegality so permeated . . . the election as to render it incurably uncertain, even though it cannot be shown to a mathematical certainty that the result might have been different." <u>Millar v. Thomas</u>, 657 S.W.2d at 751 (quoting <u>Emery</u>, 586 S.W.2d at 109). In <u>Millar</u>, the contestant, who was defeated by a margin of 162 votes, sought a declaration that the election was void upon the allegation that 251 absentee ballots were illegal. The Court affirmed the trial judge's finding that the technical discrepancies shown by the contestant did not render the ballots void and dismissed the contestant's suit.

An election may also be declared void in the absence of allegations and proof of pervasive fraud or illegality. An election may be declared void upon allegation and proof that the number of invalid ballots tallied equals or exceeds the margin whereby the contestant was declared the winner.

> The reported decisions of this State uniformly authorize the courts to void an election where the evidence reveals that the number of illegal ballots cast equals or exceeds the difference between the two candidates receiving the most votes. The rule is based upon the rationale that if all of the illegal votes had been cast for the unsuccessful candidate the result would have been changed. In Southall v. Billings, 213 Tenn. 280, 375 S.W.2d 844 (1963), Mr. Justice White, writing for the Court, suggests that such a mathematical purging of votes renders the election void because of the uncertainty of result. Id. 375 S.W.2d at 850.

Emery v. Robertson Co. Election Comm'n, 586 S.W.2d at 108-09 (citations omitted). These decisions also show that the cause or nature of the error or irregularity that renders the ballots invalid is not determinative; they may be invalid because of fraud, honest mistake, or carelessness.

A contestant can assert the right to be declared the winner only upon the allegation that the election was

-12-

valid. The claim to the office for which the contestant was a candidate must be based upon alleged errors regarding specifically identified ballots and may relate to the inclusion of invalid ballots, the exclusion of valid ballots, errors in tallying valid ballots and other errors relating to specifically identified ballots. Accordingly, the contestant is entitled to be declared the winner of the election only upon allegation and proof that the correction of errors relating to the specifically identified ballots will result in the contestant receiving a majority of the valid ballots cast. The rule was clearly set forth in Shoaf v. Bringle, 241 S.W.2d 832 (Tenn. 1951), where the Court stated:

> When we consider this case from the aspect that it was a valid election and that the petitioner, contestant, had received more votes than the contestee it becomes necessary for the contestant to show on the face of his petition or complaint that the illegal votes cast should be thrown out and that when this is done that the vote that he received plus the legal votes of which he claims to have been deprived was greater than that of the contestee. In making these allegations it was necessary that the contestant specifically point out each and every vote that was fraudulently or illegally cast on behalf of the contestee and against him and that the total of these votes when taken from the contestee and added to him would give him a majority. Under the factual situation as set forth in this bill the contestant fails to show specifically that the number of votes cast illegally here if thrown out

> would give him a majority. Therefore, when we come to purging the polls the contestant fails to sustain his position that there was a valid election and that he received a majority of the votes. It thus appears and there is nothing else that can be done but to hold that the demurrer on this feature of the case should have been sustained by the Chancellor and the suit dismissed as to this branch of the lawsuit.

Id. at 833.

The contestant may in certain limited circumstances be entitled to a recount of the ballots, even though the allegations would not entitle the contestant to be declared the winner. Upon allegations and proof that there were errors or irregularities relating to the tallying of ballots properly voted, that the ballots have been securely preserved and that the number of ballots not properly tallied equals or exceeds the margin of victory, the court may order a recount of the ballots. If, upon recount, the contestant receives a majority of the valid ballots cast, the contestant will be declared the winner. In Blackwood v. Hollingsworth, 195 Tenn. 427, 260 S.W.2d 164 (1953), in which the margin of victory was 159 votes, the contestant sought a recount of the ballots on the allegation that more than several hundred legal votes cast for the contestant were fraudulently called by the election official and credited to the contestee. The Court

overruled the contestee's demurrer and held that the trial court would be justified in recounting the votes, upon proof that there had been no tampering with these ballots in the meantime. In distinguishing the situation in Blackwood from that in Shoaf v. Bringle, the Court stated:

> In considering whether the allegations of the petition were sufficient to withstand demurrer, this case must not be confused with one in which it is sought to overcome the official returns by alleging that illegal votes are included therein in a number sufficient to reverse the result when the official returns are purged of such votes. In that situation, as held in Shoaf v. Bringle, 192 Tenn. 695, 241 S.W.2d 832, the contestant must specifically point out the allegedly illegal votes cast for the contestee. Otherwise, there would be no basis upon which to determine for whom those illegal votes were cast. In the instant case the contest is based upon the allegation that more than several hundred legal votes cast for the contestant were fraudulently called by the election officials and credited to the contestee. Once a ballot is placed in the box there is no way of ascertaining the identity of the person who cast it. Therefore, to require the contestant to allege in her petition the identity of the voter whose ballot was fraudulently called for the contestee, though cast for contestant, would be to require of the contestant that which is impossible. But if the proof be sufficient to justify the Court in going behind the official returns and sufficient to conclude that an unauthorized approach to the ballots in the box has been sufficiently guarded against, then the recount of these ballots establishes the truth or

> falsity of the charge made as to
> miscalling ballots.

Id. at 166.  See also Dixon v. McClary, 209 Tenn. 81, 349 S.W.2d 140 (1961); Summitt v. Russell, 199 Tenn. 174, 285 S.W.2d 137 (1955).

In their brief, the plaintiffs state that they are not seeking to have the election declared void.  The contestants allege, in effect, that the election was valid and they seek a recounting of the ballots.  The contestants allege specifically that there were irregularities in the counting of the ballots.  Each contestant contends that a recounting will show that the contestant received a majority of the valid ballots cast.  The only evidence on this issue was the estimate by one election judge that "approximately 20 ballots per district" in all nine districts were invalidly rejected, and the testimony of another judge that the rejection practice was applied to ballots cast for the contestees as well as for the contestants but it was possible that if the rejected ballots were counted, the results of the election would have been different.  This testimony is not sufficiently probative to establish that the claimed errors exceed the margins of victory.  The record supports the finding that the ballots were securely preserved and that there were errors in tallying the votes.  However, it does not

-16-

establish that the number of ballots improperly tallied equals or exceeds the margins of victory.  This mathematical conclusion is essential to establishing the right to have a recounting.  Therefore, the trial court properly found that the contestants failed to show that a recounting "would have changed the result of the election or rendered its outcome uncertain."  Forbes v. Bell, 816 S.W.2d at 724.  I agree that the trial judge properly dismissed the suit.

_____
Reid, J.