DEWEY L. LINEBERRY,               )
                                  )
        Plaintiff/Appellant,      )
                                  )        Appeal No.
v.                                )        M1999-00075-COA-R3-CV
                                  )
TERRY ASHE and THE WILSON         )        Wilson Chancery
COUNTY ELECTION                   )        No. 98319
COMMISSION,                       )
                                  )
        Defendants/Appellees.     )

FILED

January 27, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CHANCERY COURT FOR WILSON COUNTY

AT LEBANON, TENNESSEE

THE HONORABLE TOM E. GRAY, CHANCELLOR

W. THOMAS SCHMITZ
P. O. Box 773
Brentwood, Tennessee 37024-0773
        ATTORNEY FOR PLAINTIFF/APPELLANT

MICHAEL R. JENNINGS
326 North Cumberland Street
Lebanon, Tennessee 37087
        ATTORNEY FOR DEFENDANTS/APPELLEES

AFFIRMED AND REMANDED

WILLIAM B. CAIN, JUDGE

O P I N I O N

This case purports to be an election contest.

Appellant, Dewey L. Lineberry, was a candidate for sheriff of Wilson

County, Tennessee, subject to the general election of August 6, 1998. Appellee, Terry Ashe, was the incumbent sheriff and a candidate for re-election. There was a third candidate in the race for sheriff whose name is not disclosed by the record. Ashe was re-elected handily with Lineberry finishing a distant third, some 9,000 votes behind Ashe.

On August 12, 1998, Lineberry filed the suit at bar allegedly pursuant to Tennessee Code Annotated section 2-17-101, *et seq.*, contesting the election of Ashe.

The complaint alleges:

6. Plaintiff alleges that as a qualified contestant or candidate for the office of Sheriff of Wilson County, Tennessee, held on August 6, 1998, that he is entitled upon his petition and at his expense to demand an examination by qualified technicians of all voting machines used for casting of votes for the office of Sheriff of Wilson County, Tennessee; that he has duly made a timely demand upon the Wilson County Election Commission for such examination for the purpose of verifying the accuracy and reliability of the machines to truly and correctly register and report votes actually cast in said election; and that the Wilson County Electi[o]n Commission has informed him that it does not oppose such examination.

## COUNT II

* * *

7. Plaintiff alleges on information and belief that said voting machines malfunctioned or otherwise incorrectly registered and/or incorrectly reported votes actually cast i[n] said election, and that the outcome of said election was thereby affected. [sic]

## COUNT III

## FRAUDULENT CALL OF VOTES

* * *

8. Alternatively, Plaintiff alleges that on or about August 6, 1998, several thousand votes that were cast in said election for plaintiff were fraudulently called by election/precinct officials and credited to defendant, Terry Ashe, rather than to plaintiff, and that the outcome of said election was thereby affected.

9. That when all votes in said election that were actually cast for plaintiff are properly credited to plaintiff, the number of votes actually cast for plaintiff will exceed the number of votes cast for defendant.

2

Based upon these allegations, plaintiff prayed that all ballots and voting machines be impounded and that the court order an examination of the voting machines by qualified technicians selected by plaintiff and that "Terry Ashe, be declared to be ineligible to hold the office of Sheriff of Wilson County pursuant to election held on August 6, 1998; . . . "

On August 19, 1998, defendants Ashe and Wilson County Election Commission filed a motion to dismiss under Rule 12.02(6) Tennessee Rules of Civil Procedure for failure of the complaint to state a claim upon which relief can be granted. Defendants filed an alternative motion for a more definite statement.

By order entered August 28, 1998, the motion to dismiss under Rule 12.02(6) was denied and the motion for a more definite statement was granted. This order further granted the temporary restraining order denying access of others to the 129 voting machines used in the election and further holding:

> 5. As evidence of the accuracy of the voting machines or the accuracy of the election officials' recording of the vote on the machine used in the August 6, 1998 election for the Office of Sheriff of Wilson County, Tennessee, on a date and at a time to be determined subsequently the Court should convene specially upon the site of the present storage facility located in the office of the Wilson County Election Commission, Lebanon, TN, and there conduct an in Court examination of the voting machines and permit the parties and their respective voting machine experts to be present during such examination.

Plaintiff responded to the order for a more definite statement on September 1, 1998 asserting:

> (a) Plaintiff alleges on information and belief that at all times pertinent to the within cause of action the election/precinct officials, and their agents, servants, and employees, have had sole and exclusive possession and control of all voting machines and all necessary electrical components required to produce a readable voting result of all votes cast in the August 6th election.
>
> (b) Plaintiff further alleges on information and belief that while said machines and electrical components were within their sole and exclusive possession and control, that one or more or all of the election/precinct officials, agents, servants, and employees, whether knowingly or unknowingly have permitted said voting machines and necessary electrical components, through one or more means or instrumentality's within their sole and exclusive possession and control, whether by altering said machines and/or electrical components or by manual transcription of the vote totals, to produce and/or report vote results materially and

3

substantially different from the actual vote; hence, producing or resulting in false and/or fraudulent vote totals. [sic]

On September 2, 1998, defendants renewed their motion to dismiss the case.

Pursuant to the order of the court on September 9, 1998, all parties including the court convened at the Office of the Wilson County Election Commission where witnesses were sworn and the voting machines were examined by persons with qualifications acceptable to the court. The order resulting from this hearing was entered on November 4, 1998, and provided in part as follows:

The Court granted to plaintiff each and every request made by him to check the accuracy of the voting machines and plaintiff through his attorney announced that he, plaintiff, was satisfied that the voting machines operated properly and that the votes reported and certified by the Wilson County Election Commission were accurate and plaintiff's attorney stated that plaintiff desired to dismiss his lawsuit.

Further, in this matter, the Court finds that the Motion to Dismiss by the defendants is well-taken and should be granted.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

1. This cause is dismissed upon announcement of plaintiff that he was satisfied with the accuracy of the voting machines and that he wanted to dismiss his lawsuit and upon Motion to Dismiss filed by defendants.

2. Costs are assessed to Dewey L. Lineberry for which execution may issue, if necessary.

On December 2, 1998, defendants filed their motion for discretionary costs pursuant to Rule 54.04(2) and for reasonable attorney fees pursuant to Tennessee Code Annotated section 2-17-115, together with supporting affidavits.

On December 16, 1998, Dewey L. Lineberry filed his response to the motion for discretionary costs and attorney fees asserting that such should not be allowed.

By order entered February 24, 1999, the court granted all discretionary costs to Ashe and the Election Commission, together with attorney fees under Tennessee Code Annotated section 2-17-115.

4

This final order of the court was timely appealed.

Tennessee Code Annotated section 2-17-115 provides: "Costs and a reasonable attorney's fee shall be assessed against the contestant or the appellant if the contest or the appeal is maliciously or frivolously prosecuted."

This case was frivolous when filed, frivolous when heard, and frivolous when appealed.

Election contests are of purely statutory origin and were not recognized at common law or in equity. *Harmon v. Tyler*, 112 Tenn. 8, 83 S.W. 1041, 1044 (1903).

> The supreme court has held:
>
> > There are two grounds in Tennessee upon which an election contest may be predicated. In *Forbes v. Bell*, 816 S.W.2d 716, 719 (Tenn.1991), this Court delineated the grounds for an election contest. In *Forbes*, we held that a contestant may either file a suit to be declared a winner or file a suit to have the election declared void. In an election contest suit, courts are vested with the statutory authority to: (1) confirm an election; (2) declare an election void; (3) declare an election a tie; and (4) declare a contestant a winner. Tenn.Code Ann. § 2-17-112 (1994 Repl.).

*Lee v. Tuttle*, 965 S.W.2d 483, 484 (Tenn. 1998).

The requirements for Forbes' first ground of an election contest were delineated as follows:

> The requirements of a complaint seeking to have an election contestant declared the properly elected party were set out in *Shoaf v. Bringle*, 192 Tenn. 695, 241 S.W.2d 832 (1951), as follows:
>
> > When we consider this case from the aspect that it was a valid election and that the petitioner, contestant, had received more votes than the contestee, it becomes necessary for the contestant to show on the face of his petition or complaint that the illegal votes cast should be thrown out and that when this is done that the votes that he received plus the legal votes of which he claims to have been deprived was greater than that of the contest[ee]. In making these allegations it [is] necessary that the contestant specifically point out each and every vote that was fraudulently or illegally cast on behalf of the contestant and against him and that the total of these votes when taken from the contestee and added to him would give him a majority.
>
> *Shoaf*, 241 S.W.2d at 833. *See also Blackwood v. Hollingsworth*, 195 Tenn. 427, 260 S.W.2d 164, 166 (1953),

in which this Court, relying on *Shoaf v. Bringle*, noted that to sustain a claim of this sort, "the contestant must specifically point out the alleged illegal votes cast for the contestee."

*Forbes v. Bell*, 816 S.W.2d 716, 719 (Tenn. 1991).

In those cases where the contestant seeks not to be declared the winner himself but to have the election declared invalid, the supreme court has held:

Tennessee law empowers a court to void an election on two alternative, but closely related bases. First, "upon a sufficient quantum of proof that fraud or illegality so permeated the election as to render it incurably uncertain, even though it can not be shown to a mathematical certainty that the result might have been different." *Emery v. Robertson County Election Comm'n*, 586 S.W.2d 103, 109 (Tenn.1979); *see also State ex rel. Davis v. Kivett*, 180 Tenn 598, 177 S.W.2d 551 (1944); *Ingram v. Burnette* 204 Tenn. 149, 316 S.W.2d 31 (1958). Secondly, where some ballots are found to be illegal, [and] the number of illegal votes cast is equal to, or exceeds the margin by which the certified candidate won. *Emery v. Robertson County Election Comm'n, supra*; *Hilliard v. Park*, 212 Tenn 588, 370 S.W.2d 829 (1963).

*Millar v. Thomas*, 657 S.W.2d 750, 751 (Tenn.1983). *See also Forbes v. Bell*, 816 S.W.2d at 719-20.

In vain, one may search the complaint in this case for a single allegation of fact that provides any basis for an election contest. Likewise, the appellant's response to the motion for a more definite statement asserts nothing at all except that officials and agents of the election commission had control of the voting machines and the nebulous assertion that various agents and employees of the election commission have somehow altered the votes casts on such machines.

For some reason not evident from this record the learned chancellor was overcome by his more charitable instincts and allowed these allegations of the complaint to survive the original Rule 12.02(6) motion to the end that a "fishing expedition" occurred on September 9, 1998, which is nowhere more clearly evidenced than in the statement of counsel for the appellant, after technicians and employees of the election commission had been put to the test of in-court re-examination of the accuracy of the election machines. Said counsel:

MR. SCHMITZ: Your honor, at this point Mr. Lineberry would like to thank the representative for coming into the area and making this examination. Mr. Lineberry also further would like to state that justice has been

adequately served by this proceeding. However rare it has been employed in Tennessee, it has been in the best interest of all public candidates who proceed in future ejections as well as those who have experienced past elections.

It is a confirmation of the electoral process. It does confirm the accuracy of the voting machines based on the evidence that we have seen today. Although it has been short random sampling, we are satisfied that the results are accurate and for that reason Mr. Lineberry would like to enter a voluntary nonsuit and terminate this matter as quickly as possible without any further expense of the Court and with that concluding, we would say to the Court that Mr. Lineberry would like [to] enter a voluntary nonsuit.

Appellant predicates his complaint about the accuracy of the voting machines and his right to examine the machines in court on Tennessee Code Annotated section 2-17-110, which provides as follows:

(a) If voting machines were used in the election, any party to the contest who challenges either the accuracy of the voting machines or the accuracy of the election officials' recording of the vote on the machines may have the machine or machines brought into court to be examined by the parties or as evidence.

(b) The total votes shown on the machine shall be conclusive unless the court finds reason to believe that the vote shown on the machine is not accurate.

Tenn. Code Ann. § 2-17-110 (1994).

This statute is by its terms applicable to a complaint alleging a cause of action in a statutory election contest and not to a complaint fatally defective ab initio under Rule 12.02(6).

The final judgment of the trial court is in all respects correct but the trial court erred in failing to sustain the Rule 12.02(6) motion initially filed by the defendants since the complaint does not state a claim upon which relief can be granted.

The sparse record before the court does not provide a basis to hold this case to be malicious under Tennessee Code Annotated section 2-17-115 but it is clearly and palpably "frivolously prosecuted" under such statute and the trial court was justified in assessing attorney fees.

The assessment of discretionary costs under Rule 54 of the Tennessee Rules of Civil Procedure was within the sound discretion of the trial court and

will not be disturbed on appeal, particularly when such expenses were in large part incurred in the examination of the voting machines under count one of the complaint wherein appellant asserted that " . . . he is entitled upon his petition and at his expense . . . " to demand an examination of the voting machines.

The result reached by the trial court in this case is in all respects affirmed for reasons stated herein.

This appeal had no reasonable chance of success and is frivolous under principles set down in *Wilson v. Ricciardi*, 778 S.W.2d 450, at 454 (Tenn. Ct. App. 1989) and *Bursack v. Wilson*, 982 S.W.2d 341, at 345 (Tenn. Ct. App. 1998).

The case is remanded to the trial court for assessment of attorney fees on appeal pursuant to Tennessee Code Annotated section 2-17-115.

Costs on appeal are assessed against the appellant.

_____
CONCUR:                                    WILLIAM B. CAIN, JUDGE

_____
BEN H. CANTRELL, P.J., M.S.

_____
PATRICIA J. COTTRELL, JUDGE